UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOSEPH TROBAUGH,

      Plaintiff,

v.                                        Case No:   2:13-cv-687-FtM-DNF

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

## <u>OPINION AND ORDER</u>

This cause is before the Court on Plaintiff's Complaint (Doc. 1) filed on September 25,

2013.   Plaintiff, Joseph Trobaugh seeks judicial review of the final decision of the Commissioner

of the Social Security Administration ("SSA") denying his claim Title II application for disabled

widower's benefits and supplemental security income. The Commissioner filed the Transcript of

the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and

the parties filed legal memoranda in support of their positions.   For the reasons set out herein, the

decision of the Commissioner is **AFFIRMED** pursuant to §205(g) of the Social Security Act, 42

U.S.C. §405(g).

### I.   Social Security Act Eligibility, the ALJ Decision, and Standard of Review

### A.   Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than twelve

months.   42 U.S.C. §§416(i), 423(d)(1)(A), 1382a(3)(A); 20 C.F.R. §§404.1505, 416.905.   The

impairment must be severe, making the claimant unable to do her previous work, or any other

substantial gainful activity which exists in the national economy.   42 U.S.C. §§423(d)(2), 1382(a)(3); 20 C.F.R. §§404.1505 - 404.1511, 416.905 - 416.911.   Plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner.   *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987).

### B.   Procedural History

On June 9, 2010, Plaintiff applied for Widower's Insurance Benefits[1] and Supplemental Security Income alleging an onset date of January 16, 2008. (Tr. p. 100-115).   Plaintiff's application was denied initially on September 1, 2010, and upon reconsideration on November 18, 2010.   (Tr. p. 74-76).   A hearing was held before Administrative Law Judge Larry J. Butler ("ALJ") on March 8, 2012.   (Tr. p. 27-48).   The ALJ issued an unfavorable decision on May 30, 2012. (Tr. p. 12-22). The Appeals Council denied Plaintiff's request for review on August 23, 2013.   (Tr. p. 1-5).   The Plaintiff filed a Complaint (Doc. 1) in the United States District Court on September 25, 2013.   This case is now ripe for review.   The parties consented to proceed before a United States Magistrate Judge for all proceedings.   (See, Doc. 15).

### C.   Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled.   *Packer v. Commissioner of Social Security*, 542 F. App'x 890, 891 (11th Cir. 2013)[2](citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).   An ALJ must determine whether the claimant (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in

---

[1] Pursuant to 20 C.F.R. § 404.1520, the five-step sequential evaluation applies to applications for a period of disability, disability insurance benefits or to applications for widow's or widower's benefits.

[2] Unpublished opinions may be cited as persuasive on a particular point.   The Court does not rely on unpublished opinions as precedent.   Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. Ap. P.   Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11ᵗʰ Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Commissioner of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11ᵗʰ Cir. 2013).

The ALJ determined that Plaintiff is an unmarried widower of a deceased insured worker, has attained the age of 50, and has met the non-disability requirements for disabled widower's benefits. (Tr. p. 14). The prescribed period for these benefits ended on April 30, 2012. (Tr. p. 14. At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 16, 2008, the alleged onset date. (Tr. p. 14). At step two, the ALJ found that the Plaintiff suffered from the following severe impairments: diabetes mellitus, migraines, and hepatitis C, citing 20 C.F.R. §404.1520(c) and 416.920(c). (Tr. p. 14). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526. (Tr. p. 16). At step 4, the ALJ determined that the Plaintiff has the residual functional capacity ("RFC") to perform a full range of light work, specifically, Plaintiff could lift an/or carry twenty pounds occasionally, ten pounds frequently, stand and/or walk for six hours, and sit for six hours in an eight-hour workday. (Tr. p. 17). The ALJ determined that Plaintiff was unable to perform his past relevant work as packager in a milk plant. (Tr. p. 21). The ALJ determined that Plaintiff is closely approaching advanced age, has a high school education, and can communicate in English. (Tr. p. 21). Transferability of job skills is not at issue because Plaintiff's past relevant work was unskilled. (Tr. p. 21). The ALJ concluded that based upon Plaintiff's age, education, work experience, and

RFC, there are jobs that exist in significant numbers in the national economy that plaintiff can perform.   (Tr. p. 21). The ALJ determined that plaintiff was no under a disability from January 16, 2008 though the date of the Decision.   (Tr. p. 22).

### D.   Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales,* 402 U.S. 389, 390 (1971).   The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g).   Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).   The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.   *Foote,* 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### II. Analysis

Plaintiff raises two issues on appeal. As stated by Plaintiff, they are: (1) whether the ALJ's Decision was supported by substantial evidence; and (2) whether based on the ALJ's finding which limited the Plaintiff to work at the light exertional level, the Plaintiff should have been found disabled by the Appeals Council according to Medical Vocational Rule 202.04.

### A.   Whether ALJ's Decision is Supported by Substantial Evidence

Within this issue, Plaintiff raises three separate arguments.   First, Plaintiff argues that the ALJ erred in failing to classify Plaintiff's mental impairments as severe. Second, Plaintiff asserts that the ALJ erred in the RFC assessment by not considering the severity of Plaintiff's mental impairments and how these severe mental impairments limited Plaintiff's ability to work.   Third, Plaintiff argues that the ALJ erred in failing to obtain a vocational expert to determine whether Plaintiff's limitations preclude him from obtaining work.

### 1.   Whether ALJ Erred in Failing to Classify Plaintiff's Mental Impairments as Severe

Plaintiff argues that substantial evidence supports a finding that Plaintiff suffered from a severe mental impairment. Plaintiff claims that his mental impairments caused more than a minimal limitation on his ability to perform basic mental work activity, and therefore his impairments of Bipolar disorder, antisocial personality disorder, and polysubstance dependence were severe.   The Commissioner responds that the ALJ's finding that Plaintiff did not have a severe mental impairment is supported by substantial evidence.

At step two, "[a]n impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). A severe impairment must bring about at least more than a minimal

reduction in a claimant's ability to work, and must last continuously for at least twelve months. *See* 20 C.F.R. §§ 404.1505(a). This inquiry "acts as a filter" so that insubstantial impairments will not be given much weight. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). While the standard for severity is low, the severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

According to the Eleventh Circuit, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe," but only that the ALJ considered the claimant's impairments in combination, whether severe or not. *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).

In the instant case, the ALJ determined that Plaintiff had the following severe impairments: diabetes mellitus, migraines, and hepatitis. The ALJ carefully considered Plaintiff's alleged mental impairments including his history of mood disorder, his history of treatment, the psychological consultative examination, the four broad functional areas, and the State agency psychological consultant's Psychiatric Review Technique Form. The ALJ carefully considered Plaintiff's severe impairments in combination with his mental impairments which the ALJ did not find to be severe. Therefore, even if the ALJ erred in failing to categorize Plaintiff's mental impairments as severe, the error was harmless.

**2. Whether Plaintiff's Mental Impairments Limited Plaintiff's Ability to Work**

Plaintiff argues that his depression and bipolar disorder should have been considered severe, and because they were not considered to be severe, the RFC finding is not supported by substantial evidence. Plaintiff claims that Plaintiff's mental impairments significantly affect his ability to maintain employment.   The Commissioner argues that the ALJ thoroughly evaluated the evidence as it relates to Plaintiff's mental impairments, and the ALJ's determination is supported by substantial evidence.

In considering an individual with a mental impairment, the ALJ is required to use the "special technique" dictated by the Psychiatric Review Technique ("PRT") Form for evaluating mental impairments. *Moore v. Barnhart,* 405 F.3d 1208, 1213 (11th Cir. 2005) (citing 20 C.F.R. § 404.1520a). This technique requires the evaluation of how the claimant's mental impairment impacts four functional areas: "activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *Id*. (quoting 20 C.F.R. § 404.1520a(c)(3)-(4)). For the first three categories of mental functioning, the ALJ must rate the degree of limitation on a five-point scale: none, mild, moderate, marked, or extreme. 20 C.F.R. § 404.1520a(c)(4). For the last category, the ALJ must rate the degree of limitation on a four-point scale: none, one or two, three, or four or more. 20 C.F.R. § 404.1520a(c)(4). Under the regulations, "[i]f we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe...." 20 C.F.R. § 404.1520a(d)(1). The ALJ is required to complete a PRT form and append it to the decision or incorporate the results of this technique into the findings and conclusions of his decision. *Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005).

The ALJ determined that Plaintiff's "mental impairments of bipolar disorder, antisocial personality disorder, and polysubstance dependence did not cause more than a minimal limitation

in the claimant's ability to perform basic mental work activities and is therefore non-severe.   (Tr. p. 15).   The ALJ then acknowledged that Plaintiff had a history of mood disorder, but did not want mental health treatment, and was not a good candidate for psychotherapy.   (Tr. p. 15). The ALJ noted that Plaintiff was opposed to medication which the psychologist believed Plaintiff needed, but then later Plaintiff wanted medication.   (Tr. p. 15).   The ALJ also noted that Plaintiff had exhibited psychomotor agitation and pressured speech, however, his mental status examinations were mostly normal.   (Tr. p. 15).

On June 8, 2009, Plaintiff saw Ali Asghar, M.D. Staff Psychiatrist.   (Tr. p. 250).   Plaintiff complained of being "hyper", depressed, anxious, unable to concentrate, and having poor memory. (Tr. p.2 47). His appearance was normal.   (Tr. p. 247) He was appropriately groomed, with fair personal hygiene.   (Tr. p. 247).   His activities were normal, his attitude pleasant, polite, and cooperative.   (Tr. p. 247).   His speech was fluent and coherent, and his mood was anxious/depressed.   (Tr. p. 247). His affect was appropriate, his thought flow was spontaneous, linear, and logical.   (Tr. p. 247). His memory was intact, his attention fair, and his intelligence average.   (Tr. p. 247). Dr. Asghar diagnosed Plaintiff with mood disorder and bipolar, with polysubstance dependence which was in remission.   (Tr. p. 247). Dr. Asghar's plan was to provide supportive therapy, but not medication because Plaintiff did not want to be on medication.   (Tr. p. 248).

On August 20, 2009, Plaintiff saw Michael D. McCarty, Staff Psychologist for depression. (Tr. p. 242).   Plaintiff reported that he had been interacting with people for three weeks and felt better.   (Tr. p. 242).

On July 20, 2010, Plaintiff saw Eshan M. Kibria, D.O for a consultative examination.   (Tr. p. 286).   Dr. Kibria determined Plaintiff's work related mental activities of understanding, memory, concentration, social interaction, and adaption were intact.   (Tr. p. 287).

On June 18, 2010, Plaintiff saw Enrique Vera, M.D. Psychiatry (Tr. p. 342). Plaintiff was requesting medication for his bipolar condition.   (Tr. p. 339). His orientation was alert, his appearance and behavior was cooperative his speech was normal, his mood was anxious, his though process was normal, his insight was good, his judgment was good, and his memory was intact. (Tr. p. 340-341). Dr. Vera diagnosed Plaintiff with bipolar disorder, addictive disorder, and polysubstance abuse. (Tr. p. 341).

On October 28, 2011, Plaintiff saw Emily C. Ptaszek, Psy.D. a psychologist.   (Tr. p. 405). Plaintiff complained of being depressed, anxious, lacking in concentration and overwhelmed with diabetes.   (Tr. p. 402). Plaintiff was "quite tangential and with notably pressured speech."   (Tr. p. 403). Dr. Ptaszek found Plaintiff to be alert, agitated, speech was pressured, language intact, mood was irritable, thought process was normal, and insight and judgment intact for immediate safety.   (Tr. p. 404). Plaintiff stated he did not want individual therapy, did not want medication treatment, and Dr. Ptaszek found Plaintiff not to be a good candidate for psychotherapy because he could not tolerate feedback.   (Tr. p. 405).

On December 15, 2011, Plaintiff saw Cecilia M. Sunnenberg, M.D. a psychiatrist.   (Tr. p. 395). Plaintiff requested a medication evaluation.   (Tr. p. 391). Dr. Sunnenberg noted that Plaintiff had been evaluated multiple times in the past, and had refused medication.   (Tr. p. 392). Dr. Vera had prescribed lamotrigine, but Plaintiff did not take it for fear of the potential side effects.   (Tr. p. 392). Plaintiff wanted medication now to control his rage and his racing thoughts.   (Tr. p. 392). Dr. Sunnenberg found Plaintiff to have symptoms consistent with having bipolar disorder, but had

refused treatment in the past.   (Tr. p. 394). Dr. Sunnenberg opined that Plaintiff would not benefit

from psychotherapy.   (Tr. p. 395). Dr. Sunnenberg's diagnosis was bipolar disorder with a history

of polysubstance abuse which was in remission.   (Tr. p. 395).   Plaintiff was given the option to

take medication if he chose.   (Tr. p. 395).

On July 28, 2010, Plaintiff had a Disability Evaluation conducted by Andrea M. Loucaides,

Ph.D., a Postdoctoral Psychology resident under the direct supervision of Claudia Zsigmond, Psy.

D., a Licensed Psychologist.   (Tr. p. 292-296).   Dr. Loucaides determined that Plaintiff was

appropriately dressed, and groomed with good hygiene for the evaluation.   (Tr. p. 295).   Plaintiff

seemed mildly anxious, but rapport was easily established.   (Tr. p. 295). Plaintiff was alert, well

oriented, good recall of recent and remote events, no severe short-term or long-term memory

impairments, had appropriate attention and concentration, could complete simple math

calculations, had limited judgment and insight into his difficulties, his speech and thought

processes were goal-directed, logical and coherent, with no formal thought disorder, and no

articulation problems, with no acute mental distress. (Tr. p. 295). Dr. Loucaides's prognosis was

guarded due to Plaintiff's mental illness.   Dr. Loucaides diagnosed Plaintiff with Bipolar II

disorder, Antisocial Personality Disorder, and Polysubstance Dependence in remission.   (Tr. p.

295).   Dr. Loucaides opined that Plaintiff would benefit from brief individual mental health

counseling to obtain education about his mental illness and develop strategies to cope with his

symptoms. (Tr. p. 295).

On August 31, 201, Val Bee, Psy.D. completed a Psychiatric Review Technique form.

(Tr. p. 298).   Dr. Bee determined that Plaintiff had mild restrictions of daily living, maintaining

social functioning maintaining concentration, persistence, or pace, and no episodes of

decompensation.   (Tr. p. 308). Dr. Bee concluded that severe mental impairment or limitation

"does not appear present at this time."   (Tr. p. 310). On November 15, 2010, Thomas Conger, Ph.D. reviewed the Psychiatric Review Technique form and affirmed its conclusions.   (Tr. p. 361).

Plaintiff has the burden of proof through step four and then the burden shifts to the Commissioner at step five.   *Hines-Sharp v. Commissioner of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).   Plaintiff has the burden to show that his mental impairments cause limitations on Plaintiff's ability to work.   Plaintiff summarily concludes that the ALJ's RFC assessment should have included limitations resulting from Plaintiff's depression and then cites to multiple pages in the record.   The ALJ reviewed these medical records and noted that Plaintiff had a history of mood disorder, but did not want mental health treatment, was not a good candidate for psychotherapy, and did not want medication.   (Tr. p. 15).   These comments were supported by the medical records.   Dr. Ptaszek noted that Plaintiff did not want psychotherapy or medication. Dr. Sunnenberg also noted that Plaintiff refused medication in the past even after Dr. Vera had prescribed it for him at his request.   Further, the doctors noted that Plaintiff was within normal range in many categories.   After reviewing the records, Dr. Bee determined Plaintiff had only mild limitations in restrictions of daily living, maintaining social functioning maintaining concentration, persistence, or pace, and no episodes of decompensation.   The ALJ also carefully reviewed Dr. Zsigmond's consultative examination, and considered the results including many categories where Plaintiff was within normal range.   The ALJ then reviewed the four broad functional areas and found Plaintiff had mild limitation in social functioning, concentration, persistence or pace, and no episodes of decompensation. (Tr. p. 16).   These findings align with those of Dr. Bee and Dr. Conger. Plaintiff has failed to meet his burden of showing that he has

more than minimal limitations in his ability to perform basic mental work activities due to his mental impairments or that his mental impairments are severe.

### 3.    Vocational Expert

Plaintiff argues that the ALJ erred in failing to obtain the testimony of a vocational expert due to his nonexertional impairments.   The Commissioner asserts that a vocational expert's testimony was not required.   "The general rule is that after determining the claimant's RFC and ability or inability to return to past relevant work, the ALJ may use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform."   *Phillips v. Barnhart*, 357 F.3d 1232, 1242 (11th Cir. 2004). An ALJ may not exclusively rely on the grids when the "'claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills.'"   *Id*. (citations omitted).   The ALJ did not find that Plaintiff had more than minimal non-exertional limitations from his mental impairments. The Court determined that the ALJ did not err in determining that Plaintiff's mental impairments were not severe, and did not err in finding Plaintiff had no more than minimal limitations in his ability to do basic work activities, and any such limitations were encompassed in finding that Plaintiff could perform a full range of light work. Therefore, the ALJ did not err in failing to obtain the testimony of a vocational expert.

### B.  Whether the Appeals Council Should Have Found Plaintiff Disabled Pursuant to Medical Vocational Rule 202.04

Plaintiff argues that the Appeals Council should have issued a "partially favorable" decision.  Plaintiff asserts that the ALJ entered his Decision on May 30, 2012.  The Appeals Council rendered its Decision denying Plaintiff's Request for Review on August 23, 2013.   On October 12, 2012, Plaintiff turned 55 years old, becoming an individual of advanced age pursuant

to the Medical Vocational Rules (the "Grids").   Plaintiff argues that the Grids, specifically 202.04 provides that a 55 year old claimant with a high school education is found to be disabled if they cannot perform their unskilled past relevant work, and are limited to light exertion citing 20 C.F.R. Part 404, Subpart P, Appendix 2. Plaintiff contends that he turned 55 years old prior to the Appeals Council's Decision, has a high school education, had unskilled past relevant work, he cannot return to that work, and the ALJ found Plaintiff is limited to light exertional work, and is therefore disabled under the law, citing 20 C.F.R. §§404.1562 and 404.1563.   Plaintiff asserts that he provided new and material evidence to the Appeals Council as to changing age categories.

If an individual is 55 years of age or older, then he is considered a "[p]erson of advanced age" and with Plaintiff's RFC for light work, education, and work experience would be considered disabled under the guidelines.   20 C.F.R. Pt. 404, Subpt. P, App. 2, 20 C.F.R. § 404.1563(e), 20 C.F.R. § 404.1568(d)(4).

The Commissioner asserts that if a claimant is dissatisfied with a decision of an Administrative Law Judge then he may request that the Appeals Council review the decision pursuant to 20 C.F.R. §§404.967, 416.1467. In certain circumstances, the Appeals Council will review an Administrative Law Judge's decision.   The Commissioner asserts that Plaintiff's Request for Review is limited to the ALJ's Decision, and the ALJ in this case found Plaintiff not to be disabled as of his alleged onset date of January 16, 2008 through the date of his decision, May 30, 2012.   The Commissioner argues that at the time of the ALJ's Decision, Plaintiff was approaching advanced age category and Grid Rule 202.13 was applicable, but the fact that Plaintiff later changed age categories while his action was pending before the Appeals Council had no bearing on the ALJ's Decision.   Further, the Commissioner asserts that after review, the ALJ's Decision became final that Plaintiff was not disabled from January 16, 2008 through May 30,

2012, however, there has been no adjudication of Plaintiff's disability after May 30, 2012 and Plaintiff is free to file a new application as to this time period.

"The Appeals Council will review a case if – (1) There appears to be an abuse of discretion by the administrative law judge; (2) There is an error of law; (3) The action, findings or conclusions of the administrative law judge are not supported by substantial evidence; or (4) There is a broad policy or procedural issue that may affect the general public interest."   20 C.F.R. § 404.970(a).   The Appeals Council only reviews the decision of an administrative law judge.   20 C.F.R. § 404.970(b).   The Appeals Council may only consider evidence "'relates to the period on or before the date of the administrative law judge hearing decision' and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1261 (11th Cir. 2007) (20 C.F.R. §§404.970(b), 416.1470(b)).

In the instant case, Plaintiff asserts that the Appeals Council should have considered Plaintiff to be in a new age category.   However, the role of the Appeals Council is to review the ALJ's decision, and determine if the ALJ's decision was contrary to the weight of the evidence of record.   Plaintiff has failed to show that at the time of the ALJ's Decision, the ALJ erred in considering Plaintiff's age.   Plaintiff turning 55 after the ALJ's Decision and this information does not relate back to the period on or before the ALJ's Decision.   Plaintiff also adds that he provided new and material evidence to the Appeals Council of his advanced age. A claimant is generally permitted to present new evidence at each state of his administrative process. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1261 (11th Cir. 2007) and 20 C.F.R. §404.900(b).   Evidence submitted for the first time to the Appeals Counsel is determined under a Sentence Four analysis. *Id*. An Appeals Council must consider new and material evidence that "'relates to the period on or

before the date of the administrative law judge hearing decision' and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Id*. (20 C.F.R. §§404.970(b), 416.1470(b)).   New evidence is considered material and thereby warranting a remand if "'there is a reasonable possibility that the new evidence would change the administrative outcome.'" *Id*.   First, the evidence submitted was solely that Plaintiff had turned 55 years old after the date of the ALJ's decision, and this information is not new or material and would not change the administrative outcome because it does not relate to the date on or before the ALJ's Decision. The Court finds that the Appeals Council did not err when it declined to review the Decision of the ALJ or consider the category of advanced age in connection with Plaintiff's current application.

### III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the Commissioner is supported by substantial evidence and decided according to the proper legal standard.

**IT IS HEREBY ORDERED:**

The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g).   The Clerk is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on March 24, 2015.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties